Smith, J.
The claims of the parties in the court below, were substantially these: McLean in his petition, filed against the railway company, alleged that it was a corporation duly organized under the laws of this state, and that on the — day-, 1885, it was the owner and occupier of a railroad line from Cleveland, Ohio, to the city of Cincinnati, Ohio, which road passed through Butler county, and was used as a railroad by defendant company, and that on said day, he had purchased from the ticket agent of said company at Franklin, Ohio, a ticket from that point to Springfield, Ohio, and took the train. That on the way to Dayton, he was directed by the conductor to leave that train at Dayton, and take the one which arrived there a few minutes after his train; that he did so, and found all of the seats occupied, and could not obtain one. That after passing Dayton, the conductor of the train came to him and demanded his ticket; that he held it in his hand and showed it to him, but told him he would not give it up unless he was furnished with a seat; that the conductor again demanded his ticket, and on being refused, in a rude and violent manner seized him, and wrenched the ticket from his 'hand, spraining his wrist and otherwise injuring him.
*113 The answer of the defendant denied the assault, but alleged that the plaintiff presented the ticket to the conductor, who took it, without using any force whatever. That the plaintiff at the station in Dayton, saw, that by reason of an excursion (unexpected by the company), the seats were all filled, and that he could not procure one; but with this knowledge, he remained upon the train, and thus elected to become a passenger thereon and accept such accommodations as he could find, and that by so doing, he became a wrongdoer in refusing to give up his ticket; and that the title thereto became vested in the company, and the conductor had a right to take the property of the company, using no more force than was necessary, and that no more was used.
The summons in the case was served upon the ticket agent of the defendant company at Monroe Station, in said county. Before the filing of an answer by the company, it filed a motion (while protesting' the defendant came for the purpose of the motion only, and not as entering an appearance in the case) for the quashing the summons which had been issued, and of the service made thereof, on the ground that the court had no jurisdiction of the case, for the reason, that no part of the defendant’s road passed through Butler county, and that the service on the ticket agent at Monroe was not a good service, or as required by statute.
In support of this motion an affidavit of an attorney of the company was filed, alleging that the road of the defendant company only extended from Cleveland to Springfield. That some years ago the defendant company became the lessee of The Cincinnati & Springfield Railway, extending from Cincinnati to Springfield, and that this is the road which passes through Butler county — and other testimony was heard. The court overruled the motion, and the defendant took a bill of exceptions, stating that the evidence heard on the motion, was the affidavit referred to, and the original petition in the case, the summons, and the return of the sheriff thereon. The affidavit is made part of the bill and attached thereto. The other papers referred to are not.
On the trial of the case the jury returned a verdict for the plaintiff for $672. A motion for a new trial was filed by the *114 defendant, on the ground that the court erred,in its charge to the jury, and in its rulings on evidence, and that the verdict was against the weight of the evidence. No claim was made that the damages were excessive. The court, on the reasons assigned, refused to grant a new trial, but finding that the damages were excessive, adjudged that a new trial should be awarded, unless the plaintiff would remit the one-third thereof.
The plaintiff excepted to this action, but consented to and did remit all of said verdict but the sum of $448, and the court then overruled the motion for a new trial and rendered a judgment for the said sum of $448 and costs, to which defendant excepted and presented its bill of exceptions, containing all of the testimony given, with exceptions to the ruling of the court on questions of evidence during the trial, and on these two bills of,exceptions the many points presented in the petition in error arise.
The first question for consideration is, whether the court erred in refusing to quash the summons issued. There are several reasons why we think the court did not err in this. In the first place, it is questionable whether the bill of exceptions taken on this point can be looked at on the questions ot fact, as not containing all of the evidence submitted to the court. We suppose that a paper in the case, if offered in evidence on a trial of any question, or a copy of it, must go into a bill of exceptions the same as any other paper, if the reviewing court is called upon to judge as to the correctness of the decision of the trial court on a question of fact.
2. That the effect of the motion itself is to enter the appearance of the defendant to the action, and thereby fully to give the court jurisdiction of the defendant as it had of the subject matter. Handy v. Ins. Co., 37 O. S., 367; Elliott v. Lawhead, 42 O. S., —. See Law Bulletin, Vol. 13, 602.
3. But on the facts shown by the bill of exceptions and the papers referred to therein (if the bill is to be considered), which show a lease and an actual operation, by defendant company, of,.this line from Cincinnati to Springfield, which runs through Butler county, we are of the opinion that the suit, under section 5027, revised statutes, was properly brought in *115 this county, and that it is not necessary to give the court jurisdiction in such case that the line passing through the county should be absolutely owned by the defendant — that a title by lease, and a user of it as a railroad, is sufficient, and that service may then be properly made on a regular ticket agent of the company in the county under the provisions of section 5044, revised 'statutes.
Did the court err in the admission of evidence over the objection of the defendant? It is argued that it did in, at least, three particulars: First: In allowing the plaintiff to state the purpose of his trip, viz., that he had started to reach a point beyond Springfield, there to transact some business. Second : In allowing him to testify as to his physical condition at the time of the alleged assault upon him, and that he was then suffering from disease; and third, to testify that when he entered this train of cars at Dayton and found all of the seats' occupied, that he inquired of a brakeman, at that time passing through the car, whether another car would be added to the train, and the reply of the brakeman that there would, no evidence having been offered to show any authority of the brakeman to bind the company, or to show the nature of the duties of such a servant of the company. [
As to the first of these assignments, we are of the opinion that no issue having been raised as to the fact that the plaintiff was an ordinary passenger on the train, there was no call upon him to offer proof of this kind. That it may have been admissible, however, to show his bona fides, but that the answer given could not have operated to the prejudice of the defendant.
2. That it is admissible, in an action to recover damages for a personal assault, to show, as tending to throw light on the question of the amount that should be recovered, the physical condition of the defendant at the time of the assault upon him, and that, owing to disease, the effect upon him was greater than it otherwise might have been.
As to the third point, viz., as to the admissibility of the evidence as to the conversation with the hrakeman at Dayton, the court, as constituted, has doubt. Judge Stewart is of the opinion, that in accordance with the 'argument of the counsel *116 for the defendant, that the court is to take judicial notice of the duties and powers of a conductor of a passenger train, that like notice should be taken of those of a brakeman on such train ; and that, as the general experience is, that we see such servants assisting passengers on and off the cars and finding them seats therein, and when additional cars are to be attached to a train, assisting in that work, they are thus in position to know of such matters, as (in this case) the brakeman was asked about, and to give an answer which would bind the company.
And there is force in the suggestion. But I incline to the opinion that the law as stated in the books hardly warrants this view, or justifies the court in taking judicial notice of the powers and duties of the subordinate servants of a corporation. The doctrine seems to have grown up that there are some officers of corporations, whose general authority will be implied or presumed by the courts from their title alone. Thus, the cashier of a bank, or the president, general manager and superintendent of a railroad company, will be presumed to have very general authority to bind the company he or they represent. But so far as I can see, the rule does not go beyond this, and the general proposition of course is, “ that what one man says,‘not upon oath, can not be evidence against another man.” The exception must arise out of some peculiarity “ of situation, coupled with the declarations made by one.” 1. Wharton’s Evidence, sec. 1175. And the declaration of a brakeman, not made while in the discharge of a particular duty and with respect thereto, seems to me to be hearsay, unless it be shown he was authorized so to speak by the company. See Abbott’s Trial Evidence, 42 and 44, as to judicial notice in such cases. The question arises then as to the pertinency or materiality of the evidence, and whether it could have been prejudicial to the defendant; but we incline to the opinion, that in one point of view at least, it was material, and if improperly received, therefore prejudicial. If the brakeman was authorized to speak for the company, the plaintiff was authorized to rely upon what he said and remain upon the train expecting to get a seat in f¡he added car, and in such case the jury might have properly found, that he had not *117 elected to become a passenger and waive his right to a seat, and therefore was not in the wrong in refusing to give up his ticket to the conductor, and thus the amount of the recovery, if any, might have heen affected. But the court, not being fully agreed that there was error by the trial judge in the admission of the evidence, the exception is not sustained.
The trial judge charged the jury, substantially, that if the plaintiff, when he entered the car at Dayton, found that he could not obtain a seat therein, but voluntarily remained there, that he thereby elected to become a passenger on such train and accept such accommodations as he could find (unless he had been informed by an authorized agent of the company that an additional car would be added to the train), and that when the conductor called upon him for his fare, it became his duty to pay the same, or tender a ticket therefor, and on failure to do so, he became a wrong doer, and that the conductor might have lawfully stopped the train and put him off. But that he had no right whatever, on the refusal of the plaintiff to give up his ticket, to seize him or his ticket and take it from him by force, any more than he had to take the money from his pocket against his will, and apply it to the payment of the fare.
To this charge as given, and the refusal by the court to charge the converse of it, put in a variety of ways, the counsel for the defendant excepted; but we are entirely satisfied that the law as given to the jury by the court on this point was correct and proper. The fact that a person who enters upon a train as a passenger, has a ticket in his possession which entitles him to a passage thereon, does not in any manner operate to transfer the title thereto to the company. When the proper officer demands the fare, the passenger may satisfy the demand by a tender, either of the ticket, or of the proper amount of the fare. The election as to how it shall be done, rests with him, and the fact that he may notify the conductor that he holds such a ticket, and even show it to him, stating that he will not give it up, does not authorize such officer to take it from him against his will.
The defendant asked the court to instruct the jury, that if the plaintiff, by the exercise of proper care, could have *118 avoided the injury, that he could not recover. This, we think, was properly refused. The rule which the court was asked to give to the jur}', applies to a case in which the plaintiff claims damages for the negligence of thejdefendant,and in which the latter claims that the negligence of the plaintiff contributed to the injury sued for, and not to one where damages are claimed for an illegal assault. The conduct of the plaintiff in such last case, at the time of the alleged assault, may be shown, to establish the fact that the defendant is not guilty, as for instance that he acted in self-defense ; or to mitigate the damages, if there was provocation therefor by the plaintiff. But even if the assault is provoked by the plaintiff, and he might have avoided it, this does not operate as a defense and absolve the defendant from liability therefor.
Thos. Milliken, for Railroad Company, plaintiff in error.
Morey, Andrews & Morey, for McLean, defendant in error.
The defendant’s counsel asked the court to charge the jury, “ that if the plaintiff refused to give up his ticket, and the conductor simply took hold of it and took it out of his hands, without committing an assault, no action lies.”
At first view it would seem that this charge might properly have been given; that is, if no assault was committed no action lies. But we think, on consideration, it was properly refused. It is, in effect, asking the court to charge the jury that if an assault was committed upon the plaintiff by taking the ticket, when he refused to give it up, without committing an assawii upon him, then no action lies — which was inconsistent and calculated to mislead the jury.
The assignments of error then, made by the plaintiff in error, are not sustained. So 'far as the cross-petition in error of McLean is concerned, it appears that to save himself from the risk of a new trial, he expressly agreed to, and did enter a remittitur of a part of his verdict, and consented to have judgment for the residue, which was so rendered. He has obtained the advantage he sought, and he cannot now object to what was done. If there was' error in the action of the court, he has waived it, and must abide by what he has consented to. The judgment of the court of common pleas is affirmed, with costs, As to the cross-petition in error, the judgment is also affirmed at costs of McLean.